RYAN *v.* INDIANA LOAN AND FINANCE CORPORATION.

[No. 13,892.   Filed June 10, 1930.   Rehearing denied September 3, 1930.]

*Lindley & Bedwell* and *Thomas F. O'Mara,* for appellant.

*George W. Wells* and *Charles D. Hunt,* for appellee.

McMAHAN, J.—This is an action by appellee against appellant on what is designated as a "lease note."

There was judgment in favor of appellee for $365.80, plus $60 as an attorney fee. The only error assigned relates to the overruling of appellant's motion for a new trial, under which it is contended that the decision is not sustained by sufficient evidence, and that it is contrary to law.

On and prior to September 3, 1925, appellant was the owner of an automobile, a Dodge roadster; he negotiated a sale of the same to Robert McClean for $450; McClean had but $200, so that it was necessary that the remaining $250 be borrowed or financed in some way. Following the negotiations between appellant and McClean, the former, on September 3, called at the office of appellee and told J. C. Holden, who was the secretary and treasurer of appellee, of the negotiations with McClean and asked Holden if he could finance the sale. On being told who the purchaser was, Holden refused. Later, whether on the same day or the next day is not clear, appellant had another conversation with Holden, who then informed appellant he would finance the sale if appellant would sign the note, which Holden said would be for $295, payable in 10 monthly installments each for $29.50. On the evening of September 4, the parties met at the office of appellee, when appellant and McClean executed a bill of sale for the automobile, it being recited therein that in consideration of $250, they had sold the car to appellee. They also at the same time executed the note which is the basis of this action for $295, and McClean, in the presence of Holden, gave appellant $200 in cash, but it being late in the evening and appellant not desiring to have so much cash on his person, left the same with Holden, who, on September 5, gave appellant two checks, one for the $200, and the other for $250.

The "lease note" recites that appellant and McClean had received from appellee the Dodge roadster which

appellant had agreed to sell to McClean, and for which automobile appellant and McClean therein agreed to pay appellee $295, with interest at the rate of eight per cent per annum from maturity on all unpaid installments and attorney fees, $29.50 to be paid one month from date of note and a like sum to be paid each month thereafter until the $295 had been paid. It was also agreed therein that the automobile was to continue to be the property of appellee; that no title should vest in the makers of the note until full payment of the note and all taxes had been paid on the automobile, which appellant and McClean agreed to pay. If any installment was not paid when due, appellee was given authority to take and remove the car without any legal process, and the whole of the note was to become due; and in that case, appellee was to retain all payments for the use and depreciation of the car; that the makers were to bear all loss by reason of fire. On full payment, the car was to become the property of the makers, who agreed to keep the same insured, and, in case of a failure so to do, appellee, at its option, might obtain such insurance, and the money expended for that purpose to be secured by the instrument and be payable on demand, or retained out of the proceeds if the car was sold under the provisions of the note, although the note contained no provisions authorizing a sale. This instrument was signed by McClean and appellant, and, on the back thereof, over their signature, they guaranteed payment of the principal and interest.

The salient facts as shown by the evidence are: That Edward Dyer purchased or traded for an automobile owned by appellant and, in that transaction and as part payment therefor, traded the Dodge roadster in question to appellant, and assigned and delivered to appellant the certificate of title issued by the Secretary of State; that appellant never had a certificate of title issued to himself, but when he sold the automobile to McClean,

the certificate of title issued to Dyer was delivered to McClean, and a new certificate of title was issued to him, which recites that the automobile was subject to a lien of $295 in favor of appellee on account of a conditional sale; that appellee never had a certificate of title showing that it was the owner of the automobile, and the clear inference is that it never had possession of the car, and that appellant delivered the possession of the car to McClean; that while the "lease note" required the makers thereof to take out insurance on the car in favor of appellee, they did not do so; that at the time this note and the other papers heretofore mentioned were executed, an application for insurance was made out and signed by McClean in which it was stated that the car was mortgaged to appellee for $295; that this application was delivered to appellee, and it caused a policy of insurance to be issued by a company for which it was an agent; that the premium for this policy was $20.56, and was paid by appellee, and was not included in the $295 for which the note was given; that appellee, according to the allegations of its complaint, was at the time of the execution of the note in question, duly licensed and bonded as provided by the statute for the purpose of loaning money, and was then engaged in loaning money, buying notes, and doing a general financing business. J. C. Holden, who acted for and on behalf of appellee in the transaction, testified that appellee made no loan of any kind to appellant; that he, on behalf of appellee, discounted the note for appellant giving him $250 therefor. Appellant testified that he negotiated a sale of the car to McClean for $450, and that he informed Holden that McClean would have to borrow $250 to consummate the transaction and that Holden, acting for appellee, agreed to finance the sale if appellant would sign the note with McClean for $295.

Appellant contends that the only reasonable inference to be drawn from the evidence is that the transaction was a loan by appellee of the $250 which McClean needed to effect the purchase of the automobile, and that the note is void because it was given in violation of the provisions of ch. 125, Acts 1917 p. 401, §§9777-9781 Burns 1926, which is an act to license and regulate the business of making loans of $300 or less.

Section 1 of this act (§9777 Burns 1926) provides that no person, copartnership or corporation shall make any loan of money, credit, goods or things in action in the amount of, or to the value of, $300 or less, and charge or contract for or receive more than eight per centum annual interest, without first obtaining a license from the Auditor of State. Every applicant for a license under this act is required to give a bond in the sum of $100. Section 2 (§9778 Burns 1926) authorizes any one licensed under the act to loan not to exceed $300 and to contract for and receive thereon interest at a rate of not to exceed three and one-half per cent per month, and provides that interest shall not be payable in advance or compounded, and shall be computed on unpaid balances; that, in addition to interest, no charges for examination, service, brokerage, commission, or other thing shall be directly or indirectly charged, contracted for or received, except lawful fees paid out by the licensee for recording or releasing an instrument securing the loan, provided that, in case of a foreclosure, an attorney fee, to be fixed by the court, might be included. If interest or charges in excess of that permitted by the act is charged, contracted for, or received, the contract of loan is declared void, and the licensee shall have no right to collect or receive any principal, interest or charge. Section 3 (§9779 Burns 1926) provides, among other things, that, when a loan is made, the licensee shall deliver to the borrower a statement showing in clear and distinct terms the amount and

date of the loan, its maturity and rate of interest. Section 4 (§9780 Burns 1926) makes it unlawful for any person, copartnership or corporation, except as authorized by this act, to charge, contract for, or receive a greater rate of interest than eight per centum per annum, and subjects any one violating that provision to a fine and imprisonment, and any licensee or its agents or officers who violate §2 are subject to fine and imprisonment.

Appellee says it was not licensed to loan money under that act, but that it was licensed under §1, ch. 50, Acts 1917 p. 134, §9727 Burns 1926, as a broker, to buy and sell notes, bonds and bills of exchange, and that the provisions of ch. 125, *supra*, are not applicable. There is no merit in this contention. Appellee was not acting as a broker in any sense of the word. There is no evidence that appellee was a licensed broker. Indeed, it would not change the result of this appeal if appellee was a licensed broker. The transaction in question was a loan of money by appellee and cannot be construed otherwise. The fact that appellee's witness, Holden, testified that it was not a loan does not change the legal effect of the transaction. Appellee, in order to avoid the provisions of said ch. 125 relating to loans of $300 or less, and which prohibits the taking or contracting for interest in excess of eight per cent and the deduction of interest on such loans in advance, contends that the $20.56 which it paid for insurance should be taken into consideration and deducted from the $45 which was added to the $250 actually advanced by it. This contention cannot prevail. The instrument sued on conclusively shows that the amount paid for insurance was not included in the $295. If it be conceded that the cost of the insurance was included in the $295 for which the note was given, the interest charged and deducted in advance would be in excess of eight per cent.

The transaction in question was forbidden by statute. If the loan was made by appellee without the license required by ch. 125, it was made in violation of §1 of that act. If appellee was licensed under that act, the transaction was void for several reasons, the most conspicuous of which are that the interest charged was deducted in advance, and that the note did not conform with the statutory requirements. It follows that the decision of the court is contrary to law.

Judgment reversed, with directions to sustain the motion for a new trial.

### ON PETITION FOR REHEARING.

McMahan, J.—Appellee takes exception to the statement that Holden said the note would be for $295, and says it was Ryan who said the note would be for that amount, and insists that this proves that the transaction was not a loan, but a sale of the note to or a discount of the note by appellee. Ryan testified that the day before the note was executed, and after Holden had said he would loan the money if he, Ryan, would sign the note, that Holden said "the payments would run $29 something a month for ten months." Holden testified that Ryan said he was selling the car for $450, was getting $200 cash, and wanted to finance the balance, and that the face value of the note was $295. Ryan did not deny making the statement that the face value of the note would be $295, nor does Holden deny saying that the payments would be $29 something a month for 10 months. We may assume that each of these witnesses testified truthfully. The evidence does not show which of said statements was made first. The note was to be payable to appellee, and it is most reasonable to assume that it named the terms upon which the money would be furnished by it, and that appellant, in response to the

statement as to the amount of the monthly payments, then made the statement as to the face value of the note. Let it be assumed, however, that appellant was the first to mention the fact that the note was to be for $295, the result would be the same. McClean gave no note to Ryan and appellee did not discount such a note. The only note ever discussed by the parties and the only note executed was a note given by McClean to appellee, which appellant signed as a maker, and, in consideration of the giving of this note to appellee, it gave the check for $250 to appellant. Appellee not only made this check payable to appellant, but insisted that McClean should pay appellant the $200 in the presence of Holden, and, in this connection, appellee prepared a bill of sale reciting that McClean and appellant had sold the automobile to appellee, without which the conditional-sale contract or "lease note" reserving title in appellee could not have been executed.

Considering only the evidence favorable to appellee, and the inferences to be drawn therefrom in its favor, the transaction must be held to be a loan. Appellee says that all prior negotiations were merged in the contract which is the foundation of this action. We concur in this statement, and hold that the contract on its face completely overthrows the contention that the transaction was the sale of the contract or note by appellant to appellee and a discount thereof by the latter.

Rehearing denied.